# EXHIBIT A



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

THE ACTING ASSISTANT SECRETARY

February 14, 2025

Dear Colleague:

Discrimination on the basis of race, color, or national origin is illegal and morally reprehensible. Accordingly, I write to clarify and reaffirm the nondiscrimination obligations of schools and other entities that receive federal financial assistance from the United States Department of Education (Department).[1] This letter explains and reiterates existing legal requirements under Title VI of the Civil Rights Act of 1964,[2] the Equal Protection Clause of the United States Constitution, and other relevant authorities.[3]

In recent years, American educational institutions have discriminated against students on the basis of race, including white and Asian students, many of whom come from disadvantaged backgrounds and low-income families. These institutions' embrace of pervasive and repugnant race-based preferences and other forms of racial discrimination have emanated throughout every facet of academia. For example, colleges, universities, and K-12 schools have routinely used race as a factor in admissions, financial aid, hiring, training, and other institutional programming. In a shameful echo of a darker period in this country's history, many American schools and universities even encourage segregation by race at graduation ceremonies and in dormitories and other facilities.

---

[1] Throughout this letter, "school" is used generally to refer to preschool, elementary, secondary, and postsecondary educational institutions that receive federal financial assistance from the Department.

[2] Title VI provides that: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d, *et seq.*; 34 C.F.R. § 100, *et seq.*

[3] This document provides significant guidance under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432 (Jan. 25, 2007). This guidance does not have the force and effect of law and does not bind the public or create new legal standards. This document is designed to provide clarity to the public regarding existing legal requirements under Title VI, the Equal Protection Clause, and other federal civil rights and constitutional law principles. If you are interested in commenting on this guidance, please email your comment to OCR@ed.gov or write to the following address: Office for Civil Rights, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, D.C. 20202. For further information about the Department's guidance processes, please visit the Department's webpage here.

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2

Educational institutions have toxically indoctrinated students with the false premise that the United States is built upon "systemic and structural racism" and advanced discriminatory policies and practices. Proponents of these discriminatory practices have attempted to further justify them—particularly during the last four years—under the banner of "diversity, equity, and inclusion" ("DEI"), smuggling racial stereotypes and explicit race-consciousness into everyday training, programming, and discipline.

But under any banner, discrimination on the basis of race, color, or national origin is, has been, and will continue to be illegal.

The Supreme Court's 2023 decision in *Students for Fair Admissions v. Harvard*[4] (*SFFA*), which clarified that the use of racial preferences in college admissions is unlawful, sets forth a framework for evaluating the use of race by state actors and entities covered by Title VI. The Court explained that "[c]lassifying and assigning students based on their race" is lawful only if it satisfies "strict scrutiny," which means that any use of race must be narrowly tailored—that is, "necessary"—to achieve a compelling interest.[5] To date, the Supreme Court has recognized only two interests as compelling in the context of race-based action: (1) "remediating specific, identified instances of past discrimination that violated the Constitution or a statute"; and (2) "avoiding imminent and serious risks to human safety in prisons, such as a race riot."[6] Nebulous concepts like racial balancing and diversity are not compelling interests. As the Court explained in *SFFA*, "an individual's race may never be used against him" and "may not operate as a stereotype" in governmental decision-making.[7]

Although *SFFA* addressed admissions decisions, the Supreme Court's holding applies more broadly. At its core, the test is simple: If an educational institution treats a person of one race differently than it treats another person because of that person's race, the educational institution violates the law. Federal law thus prohibits covered entities from using race in decisions pertaining to admissions, hiring, promotion, compensation, financial aid, scholarships, prizes, administrative support, discipline, housing, graduation ceremonies, and all other aspects of student, academic, and campus life. Put simply, educational institutions may neither separate or segregate students based on race, nor distribute benefits or burdens based on race.

Although some programs may appear neutral on their face, a closer look reveals that they are, in fact, motivated by racial considerations.[8] And race-based decision-making, no matter the form, remains impermissible. For example, a school may not use students' personal essays, writing samples, participation in extracurriculars, or other cues as a

---

[4] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023).
[5] *Id.* at 207.
[6] *Ibid.*
[7] *Id.* at 218.
[8] *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

means of determining or predicting a student's race and favoring or disfavoring such students.[9]

Relying on non-racial information as a proxy for race, and making decisions based on that information, violates the law. That is true whether the proxies are used to grant preferences on an individual basis or a systematic one. It would, for instance, be unlawful for an educational institution to eliminate standardized testing to achieve a desired racial balance or to increase racial diversity.

Other programs discriminate in less direct, but equally insidious, ways. DEI programs, for example, frequently preference certain racial groups and teach students that certain racial groups bear unique moral burdens that others do not. Such programs stigmatize students who belong to particular racial groups based on crude racial stereotypes. Consequently, they deny students the ability to participate fully in the life of a school.

The Department will no longer tolerate the overt and covert racial discrimination that has become widespread in this Nation's educational institutions. The law is clear: treating students differently on the basis of race to achieve nebulous goals such as diversity, racial balancing, social justice, or equity is illegal under controlling Supreme Court precedent.

All students are entitled to a school environment free from discrimination. The Department is committed to ensuring those principles are a reality.

This letter provides notice of the Department's existing interpretation of federal law. Additional legal guidance will follow in due course. The Department will vigorously enforce the law on equal terms as to all preschool, elementary, secondary, and postsecondary educational institutions, as well as state educational agencies, that receive financial assistance.

The Department intends to take appropriate measures to assess compliance with the applicable statutes and regulations based on the understanding embodied in this letter beginning no later than 14 days from today's date, including antidiscrimination requirements that are a condition of receiving federal funding.

All educational institutions are advised to: (1) ensure that their policies and actions comply with existing civil rights law; (2) cease all efforts to circumvent prohibitions on the use of race by relying on proxies or other indirect means to accomplish such ends; and (3) cease all reliance on third-party contractors, clearinghouses, or aggregators that are being used by institutions in an effort to circumvent prohibited uses of race.

---

[9] *Students for Fair Admissions*, 600 U.S. at 230 ("[U]niversities may not simply establish through application essays or other means the regime we hold unlawful today.").

Institutions that fail to comply with federal civil rights law may, consistent with applicable law, face potential loss of federal funding.

Anyone who believes that a covered entity has unlawfully discriminated may file a complaint with OCR. Information about filing a complaint with OCR, including a link to the online complaint form, is available [here](.).

Thank you in advance for your commitment to providing our Nation's students with an educational environment that is free of race, color, or national origin discrimination.

Sincerely,

/s/
Craig Trainor
Acting Assistant Secretary for Civil Rights
United States Department of Education