# EXHIBIT N

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| NATIONAL EDUCATION ASSOCIATION; *et. al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION;<br>*et al.*,<br><br>Defendants. | Case No.: 1:25-cv-00091<br><br>**DECLARATION OF MEMBER E IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

**DECLARATION OF MEMBER E IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, ▮▮▮▮▮▮▮, hereby declare that:

1. My name is Member E. I am over the age of 18 and have personal knowledge of the facts stated herein. If called to testify, I could and would do so competently.

2. I submit this Declaration in my individual capacity and not on behalf of the institution that employs me.

3. I am a member of NEA.

4. I am a professor at a university in the southeastern United States. My university receives funding from the Department of Education.

5. I hold a bachelor's degree in social science education, a master's degree in instruction and curriculum leadership with an emphasis in special education, and a doctorate in instruction and curriculum leadership with an emphasis in special education and applied behavior analysis.

6. I have 13 years of professional experience in higher education and 13 years of experience as a middle and high school special education teacher. I teach courses in special education, preparing pre-service special education teachers on topics such as learning disabilities, autism, ADHD, intellectual disabilities, sensory impairments, physical disabilities, and emotional/behavioral disorders. My instruction includes inclusive strategies such as Universal Design for Learning (UDL), differentiated instruction, assistive technology, Positive Behavior Interventions and Supports (PBIS), social-emotional learning, and trauma-informed teaching. Additionally, I educate future educators on the history of disability and principles of inclusive education to help them understand systemic barriers that marginalize students with disabilities and to equip them with the tools needed to support students academically and socially. We often have class discussions that revolve around racial disparities within treatment of students with disabilities as well as discussing the 1954 case Brown vs Board being foundational for the civil rights for those with disabilities. We also discuss the fight for civil rights when we discuss the passing of the Vocational Rehabilitation Act in 1973 and the work of Judy Heumann and others who fought for their rights in the workplace.

7. I am aware that on February 14, 2025, the U.S. Department of Education issued a Dear Colleague Letter and related guidance threatening colleges with investigation and the potential loss of federal funding for teaching or scholarship related to diversity, equity and inclusion (DEI).

8. Since February 14, 2025, my teaching has been impacted by concerns that my students will no longer have the opportunity to learn about diversity, equity, and inclusion (DEI) in the context of working with students with disabilities. My courses foster a culture of belonging, reduces stigma, helping students understand that perceptions matter and how to change perceptions, and increasing disability awareness. My fear this that the Dear Colleague Letter will restrict or eliminate these important conversations.

9. I worry that these programs, including the programs I teach, will be targeted as impermissible DEI because, for example, they involve social-emotional learning, learning about systemic barriers, and inclusion. The demand for special education services continues to grow due to factors such as improved identification of disabilities, increased autism diagnoses, and heightened awareness of learning differences. Special education teachers require training in differentiated instruction, behavior management, assistive technology, and inclusive practices. However, there is a nationwide shortage of special education teachers, exacerbated by high burnout rates, lower retention, and fewer graduates entering the field. The need for qualified professionals is critical to ensuring that students with disabilities receive the support necessary to succeed academically, socially, and emotionally.

10. On March 7, 2025, my Provost instructed department chairs and faculty in my department to revise course descriptions to remove any language related to DEI.   It is my

understanding that this directive was in response to the Dear Colleague Letter. As a result of the Dear Colleague Letter, we have had to revise our course descriptions, removing terms such as "disability," "inclusion," and "culturally responsive."

11. The Provost's directive to follow the Dear Colleague Letter has directly affected my role as a professor, as it conflicts with national standards set by the Council for Exceptional Children, which I use in designing my courses and instruction. These standards require that beginning special education professionals demonstrate understanding of "the multiple influences on development, individual difference, diversity, including exceptionalities, and families and communicates to plan and implement inclusive learning environments." [1] For example, CEC Initial Preparation Standard 1.1 states, "Beginning special education professionals understand how language, culture, and family background influence the learning of individuals with exceptionalities. Additionally, CEC Initial Preparation Standard 2.1 states, "Beginning special education professionals, through collaboration with general educators and other colleagues, create safe, inclusive, culturally responsive learning environments to engage individuals with exceptionalities in meaningful learning activities and social interactions." The directive also conflicts with the standards of the Council for the Accreditation of Educator Preparation (CAEP), another set of standards that I incorporate in my teaching and instruction, which establish, for example, that teaching candidates should demonstrate competency in "creating safe and supportive learning environments . . . in order to work effectively with diverse P-12 students and their families," [2] skills associated with diversity, equity, and inclusion.. My

---

[1] https://exceptionalchildren.org/standards/initial-practice-based-professional-preparation-standards-special-educators
[2] https://caepnet.org/standards/2022-itp/standard-1

teaching is designed to train students to meet these standards, but the changes I am required to make undermine my ability to prepare students to meet the standards set by the profession.

12. I fear that additional changes to our curriculum related to DEI will be required, further diminishing the quality of education we provide to future special educators. There is a widespread misunderstanding of how DEI practices support all students. Eliminating DEI-related coursework and terminology will negatively impact student success. The majority of our students are economically disadvantaged, and the potential loss of resources due to restrictions on DEI instruction is a significant concern. These funds are critical to ensuring that students receive the support they need to succeed.

13. As a result of these restrictions, I have been compelled to alter my speech, modify course descriptions, and fear that I will need to further change my assignments and curriculum. For example, I typically assign a reflection based on the movie Crip Camp which allows students to see the fight for social justice for people with disabilities as they tried to build a movement to pass the Vocation Rehabilitation Act in 1973. I am considering removing this assignment from my course from this point forward because topics of diversity, equity, and inclusion in the movement, the film, and student reflections, could be prohibited by the Dear Colleague Letter. These changes will ultimately harm my students, leaving them unprepared to become effective special education teachers.

14. The Dear Colleague Letter and related guidance from the Department of Education should not be permitted to suppress academic speech on DEI. As long as these restrictions remain in place, I fear I will be unable to fully fulfill my role as an educator or speak freely on this essential topic.

15. I am submitting this declaration anonymously because I fear retaliation from my employer as well as harassment and threats from members of the public for challenging the policies of the Trump administration restricting teaching and discussion that deals with issues of race, disability, and gender.

I declare under penalty of perjury that the above is true and correct.

Executed this 18 day of March 2025.

