# EXHIBIT B

**Reminder of Legal Obligations Undertaken in Exchange for Receiving Federal Financial Assistance and Request for Certification under Title VI and *SFFA v. Harvard***

## **DIRECTIONS**

The attached certification form must be completed by the senior educational official as defined by Ed 501.03 (m)* for each district or chartered public school and returned to the New Hampshire Department of Education (NHED).

One certification form must be completed for each individual district or chartered public school.

Email the completed certification form in its entirety, including the Mandatory Supplement Questionnaire, to [federalcompliance@doe.nh.gov](mailto:federalcompliance@doe.nh.gov), **no later than 5:00 pm on Thursday, April 10, 2025,** with the email subject line: Title VI Compliance Certification/District Name (Charter Name).

If no certification form is received by NHED by the deadline above, NHED is required to report to the United States Department of Education that no certification was received.

All issues of noncompliance and a proposed enforcement plan will be submitted to the United States Department of Education.

*Ed 501.03 (m) "Senior educational official" means the top executive in an educational organization who makes the key decisions on spending, staffing, and other education policies.*



UNITED STATES DEPARTMENT OF EDUCATION
WASHINGTON, D.C. 20202

April 3, 2025

# Reminder of Legal Obligations Undertaken in Exchange for Receiving Federal Financial Assistance and Request for Certification under Title VI and *SFFA v. Harvard*

**Requested Certification:**

**On behalf of _____[SEA/LEA], I acknowledge that I have received and reviewed this Reminder of Legal Obligations Undertaken in Exchange for Receiving Federal Financial Assistance and Request for Certification under Title VI and *SFFA v. Harvard*.  I further acknowledge that compliance with the below and the assurances referred to, as well as this certification, constitute a material condition for the continued receipt of federal financial assistance, and therefore certify our compliance with the below legal obligations.**

_____

Signature

_____

_ Date

_____

Title and District or State

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[1]

Notification of the obligations imposed by Title VI are incorporated throughout federal funding and contracting as a specific condition on the receipt of federal funds by educational institutions throughout the United States such as your own and have been in force and effect for decades:

> Title VI of the Civil Rights Act unambiguously imposes a condition on the grant of federal moneys. Section 601 of Title VI states that "[n]o person ... shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Recipients of Federal financial assistance are automatically subject to the nondiscrimination obligation imposed by the statute.

---

[1] 42 U.S.C. § 2000d. The United States Department of Education's regulations regarding Title VI further state that a recipient of federal funds may not, "on ground of race, color, or national origin ... [r]estrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program." 34 C.F.R. § 100.3(b)(1)(iv). Nor may a funding recipient, such as a college or university "[d]eny an individual an opportunity to participate in the program through the provision of services or otherwise or afford him an opportunity to do so which is different from that afforded others under the program" on the basis of race, color, or national origin. *Id.* § 100.3(b)(1)(vi).

> The statutory mandate can hardly escape notice. Every application for Federal financial assistance must, "as a condition to its approval and the extension of any Federal financial assistance," contain assurances that the program will comply with Title VI and with all requirements imposed pursuant to the executive regulations issued under Title VI. In fact, applicants for federal assistance literally sign contracts in which they agree to comply with Title VI and to "immediately take any measures necessary" to do so. This assurance is given "in consideration of" federal aid, and the federal government extends assistance "in reliance on" the assurance of compliance. *See* 3 R. Cappalli, Federal Grants § 19:20, at 57, and n. 12 (1982) (written assurances are merely a formality because the statutory mandate applies and is enforceable apart from the text of any agreement).

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629–30 (1983).

Direct receipt of federal funding under Title I Part A of the Elementary and Secondary Education Act of 1965 *as amended* (20 U.S.C. § 6301 *et seq.*) is conditioned with an assurance that your entity "[w]ill comply with all Federal statutes relating to nondiscrimination. These include but are not limited to: … Title VI of the Civil Rights Act of 1964 (P.L. 88-352) which prohibits discrimination on the basis of race, color or national origin." [Revised Assurances Template: The Elementary and Secondary Education Act of 1965, as amended by the Every Student Succeeds Act](#), p. 6. Similar assurances are required under federal contracts and grants. Specifically, federal regulations require that "[t]he Federal agency or pass-through entity *must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations*—including provisions protecting free speech, religious liberty, public welfare, and the environment, *and those prohibiting discrimination*—and the requirements of this part. The Federal agency or pass-through entity must communicate to a recipient or subrecipient all relevant requirements, including those contained in general appropriations provisions, and incorporate them directly or by reference in the terms and conditions of the Federal award." 2 CFR § 200.300(a) (emphasis added).

Moreover, each State Education Agency is required to file a single set of assurances with the Secretary as part of its consolidated State plan or application under the Elementary and Secondary Education Act of 1965, as amended (20 U.S.C. 7844). These assurances include the SEA's commitment to comply with all Federal statutes regarding nondiscrimination, including, but not limited to, Title VI of the Civil Rights Act of 1964.

In *Students for Fair Admissions v. President and Fellows of Harvard College* ("*SFFA v. Harvard*"), 600 U.S. 181 (2023), the Supreme Court held that the race-based affirmative action programs at Harvard and the University of North Carolina were illegal because they violated the Equal Protection Clause of the Fourteenth Amendment (for state schools like North Carolina), as well as Title VI (for state and private schools that receive federal funding like Harvard). The Court explained that the Equal Protection Clause "represent[s] a foundational principle—the absolute equality of all citizens of the United States politically and civilly before their own laws." *Id.* at 201 (internal quotation marks omitted). It "'forbids discrimination by the General Government, or by the States, against any citizen because of his race.'" *Id.* at 205 (alterations omitted; quoting *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). Put simply, the Equal Protection Clause and Title VI prohibit race-based action, with only the narrowest of exceptions. *Id*.

"The entire point of the Equal Protection Clause is that treating someone differently because of their skin color is *not* like treating them differently because they are from a city or from a suburb, or because they play the violin poorly or well." *SFFA v. Harvard*, 600 U.S. at 220. That means that "race may never be used as a 'negative' and that it may not operate as a stereotype," and the Court's "cases have stressed that an individual's race may never be used against him in the admissions process." *Id.* at 218. Through its equity mandates, the Biden administration has, as did the colleges and universities in *SFFA v. Harvard*, "concluded, wrongly, that the touchstone of an individual's identity is not challenges bested, skills built, or lessons learned but the color of their skin. Our constitutional history does not tolerate that choice." *Id.* at 231. As the Supreme Court emphasized, "[e]liminating racial discrimination means eliminating all of it." *Id.* at 206.[2]

Given the text of Title VI and the assurances you have already given, any violation of Title VI—including the use of Diversity, Equity, & Inclusion ("DEI") programs to advantage one's race over another—is impermissible. The use of certain DEI practices can violate federal law. The continued use of illegal DEI practices may subject the individual or entity using such practices to serious consequences, including:

1. The use of the provisions of 42 U.S.C. § 2000d-1 to seek the "termination of or refusal to grant or to continue assistance under such program," eliminating federal funding for any SEA, LEA, or educational institution that engages in such conduct.[3]

2. For entities and institutions that use DEI practices in violation of federal law, those entities may incur substantial liabilities, including the potential initiation of litigation for breach of contract by the Department of Justice in connection with civil rights guarantees contained in federal contracts and grant awards seeking to recover previously received funds paid to them under these contracts and grants.[4]

---

[2] The only exception to this prohibition on the use of racial classifications is where their use satisfies "strict scrutiny" under the Equal Protection clause. A racial classification will survive strict scrutiny only where its use advances a compelling governmental interest and the use of race is narrowly tailored to achieve that interest. *SFFA v. Harvard*, 600 U.S. at 207. "Classifying and assigning' students based on their race 'requires more than an amorphous end to justify it.'" *Id.* at 214 (alteration omitted). Goals to correct "societal discrimination," for example, are insufficient. *Id.* at 226. The Supreme Court has been clear that only two interests rise to the level of "compelling": (1) "remediating specific, identified instances of past discrimination that violated the Constitution or a statute;" and (2) "avoiding imminent and serious risks to human safety in prisons, such as a race riot." *Id.* at 207. And even if there is an identified compelling interest, "the government's use of race" must be "'narrowly tailored'"—i.e., "'necessary'"—to "achieve that interest." *Id.*

[3] "Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made and, shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law." 42 U.S.C. § 2000d-1.

[4] Title VI allows the enforcement of conditions attached to federal funding by "any other means authorized by law." One enforcement mechanism for Title VI violations is a suit by the Attorney General for breach of contract. *See, e.g.*, *Guardians Ass'n v. Civil Serv. Comm'n of N.Y.C.*, 463 U.S. 582, 630 n.24 (1983) ("the Federal Government can always sue any recipient who fails to comply with the terms of the grant agreement"); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 772 (1979) (White, J., dissenting) ("The 'other means' provisions of [Title VI] include agency suits to enforce contractual antidiscrimination provisions"); *United States v. Marion Cnty. Sch. Dist.*, 625 F.2d 607, 609–11 & 617 (5th Cir. 1980) (concluding "that the United States is entitled to sue to enforce contractual assurances of compliance with Title VI's prohibition against discrimination in the operation of federally-funded schools"); *see also* Arthur R. Block, *Enforcement of Title VI Compliance Agreement by Third Party Beneficiaries*, 18 HARV. C.R.C.L. L. REV. 1, 9 n.24 (1983) (noting that the Department has enforced Title VI "under two legal authorizations": suits under Title IV of the Civil Rights Act of 1964 and actions for "specific performance of contractual assurances of non-discrimination made by fund recipients").

3. Moreover, the submissions of claims for money from the federal government when an entity is not in compliance with Title VI and/or its assurances due to certain DEI practices subjects the entity to liability under "[t]he False Claims Act (FCA) [which] imposes liability on anyone who 'knowingly' submits a 'false' claim to the Government." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 742 (2023) (citing 31 U.S.C. § 3729(a)). Under the FCA, violators face penalties including treble damages and civil penalties of thousands of dollars per violation.

**Reminder of Legal Obligations Undertaken in Exchange for Receiving Federal Financial Assistance and Request for Certification under Title VI and *SFFA v. Harvard***

# Mandatory Supplement Questionnaire

Upon investigation, have there been instances of noncompliance identified within your LEA?

☐   Yes

☐   No

If the answer to the question above is yes, please describe each issue of noncompliance found within your LEA.

For each area of noncompliance identified above, detail your remediation plans including intended date of remediation completion.