**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

NATIONAL EDUCATION
ASSOCIATION, et al.,

        Plaintiffs,

   v.

UNITED STATES DEPARTMENT
OF EDUCATION, et al.,

        Defendants.

Case No. 1:25-cv-00091-LM

**BRIEF OF AMICUS CURIAE LANDMARK LEGAL FOUNDATION IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

*Page*

TABLE OF CONTENTS……………………………………………………………..…….. ii

TABLE OF CITED AUTHORITIES………………………………………………………… iii

STATEMENT OF INTEREST OF *AMICUS CURIAE*…………………………………………. 1

SUMMARY OF ARGUMENT…………………………………………………………… 1

ARGUMENT…………………………………………………………………………….. 2

    A.  The Framers recognized limits on a court's use of its equitable powers
        tethered to fundamental rules and tradition…………………………………………… 4

    B.  The APA does not authorize the Court to vacate the DCL……………………………… 7

CONCLUSION…………………………………………………………………………… 11

# TABLE OF CITED AUTHORITIES

*Page*

**CASES**

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022).................................................................. 8

*"Barbara," et al. v. Trump*,
(Case No. 25-cv-244, D.N.H.)…………………………………...…………… 2

*Bennett v. Spear*,
520 U.S. 154 (1997)........................................................................ 10

*California v. Texas*,
593 U.S. 659 (2021)........................................................................ 2

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799, 808 (2024)…………………………...……………………….. 10

*Dennis v. United States*,
341 U.S. 494 (1951)…………………………………..………………… 7-8

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund*,
527 U.S. 308 (1999)…………………………………………………… 7

*J.G.G. v. Trump*,
(Case No. 1:25-cv-00766, D.D.C., Mar. 15, 2025)........................................ 3

*Kisor v. Wilkie*,
588 U.S. 558 (2019)………………………………………………… 8

*Lewis v. Casey*,
518 U.S. 343 (1996)………………………………………………… 9

*Missouri v. Jenkins*,
515 U.S. 70 (1995)................................................................... 4, 5, 6

*Newsom v. Trump*,
(Case No. 3:25-cv-04870, N.D. Cal., June 12, 2025)........................................ 3

*Planned Parenthood Fed'n of Am. Inc. v. Robert F. Kennedy*,
(Case No. 1:25-cv-11913, D. Mass., July 7, 2025)........................................ 3

*Trump v. CASA, Inc.*,
No. 24A884, 2025 U.S. LEXIS 2501 (June 27, 2025)................................. 1, 7

*Page*

*Trump v. Hawaii,*
      585 U.S. 667 (2018)........................................................................................... 9

*United States v. Texas,*
      599 U.S. 670 (2022)....................................................................... 1, 7-8, 9-10

## UNITED STATES CONSTITUTION

U.S. Const. art. III, § 1............................................................................................ 4

## STATUTES

Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d. Sess. 36-37 (1946);
      92 Cong. Rec. 2159 (1946)................................................................................ 9

5 U.S.C. § 702........................................................................................................ 8

5 U.S.C. § 703................................................................................................... 9, 10

5 U.S.C. § 706........................................................................................................ 8

## OTHER AUTHORITIES

Adity Bamzi, *Federal Courts, Practice & Procedure: History of the Administrative
      Procedure Act & Judicial Review: The Path of Administrative Law Remedies*,
      98 Notre Dame L. Rev. 2037 (2023)............................................................. 7, 9

Brutus No. 11, Jan. 31, 1788, in 2 *The Complete Anti-Federalist*
      (Herber J. Soring ed., 1981)......................................................................... 5-6

Exec. Order No. 14,160, 90 Fed. Reg. 8449 (Jan. 20, 2025)...................................... 2

Federal Farmer No. 15, Jan. 18, 1788, in 2 *The Complete Anti-Federalist*
      (Herber J. Soring ed., 1981)............................................................................ 5

Gary L. McDowell, *Equity and the Constitution,*
      (University of Chicago Press, 1982)............................................... 4-5, 5-6, 6-7

John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call
      for Universal Injunctions or Other Universal Remedies*, 37 Yale J. on Reg. Bull. 37
      (2020)...............................................................................................9-10

*Page*

*The Federalist No. 78* (Alexander Hamilton) (Jacob Cooke ed., 1961)…………………………… 6

*The Federalist No. 83* (Alexander Hamilton) (Jacob Cooke ed., 1961)…………..…………… 6

F.R.C.P. 23…………………………………………………………………...………………… 2

F.R.C.P. 65(a)…………………………………………………………………...……………… 2

3 William Blackstone, *Commentaries on the Laws of England* 436
 (1786)........................................................................................................................... 6

*Webster's New International Dictionary* 2291 (2d ed. 1954)………………..……………… 8

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

Landmark Legal Foundation ("Landmark") is a national public interest law firm committed to preserving the principles of limited government, separation of powers, federalism, advancing an originalist approach to the Constitution, and defending individual rights and responsibilities. Specializing in constitutional history and litigation, Landmark submits this brief in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.[1]

## SUMMARY OF ARGUMENT

The Administrative Procedure Act (APA) does not authorize the Court to vacate the Dear Colleague Letter at the heart of this dispute. The APA does not empower a "single judge to award a novel form of relief affecting parties and nonparties alike." *United States. v. Texas,* 599 U.S. 670, 698 (Gorsuch, J., concurring). Interpreting Section 706 of the APA to allow the Court to issue universal relief in the form of vacatur for an administrative action without force of law perpetuates many of the problems addressed at length in the Supreme Court's recent decision, *Trump v. CASA, Inc.,* No. 24A884, 2025 U.S. LEXIS 2501 (June 27, 2025).[2]

Plaintiffs are asking the Court to vacate a February 14, 2025, "Dear Colleague Letter" ("DCL") drafted by the Department of Education ("DOE" or "the Department") reminding stakeholders that discrimination based on race is illegal and violates DOE policy. (Doc. no. 1-1.) The DCL did not constitute a final agency action, nor did it represent any action at all. It does not have the force of law. Instead, it serves as a clarification and affirmation of nondiscrimination obligations for all educational institutions receiving federal funding. At most, it represents the Department's findings and conclusions. Yet the Court issued a preliminary

---

[1] Plaintiffs and Defendants consent to the submission of this brief.
[2] Although the majority decline to address whether the APA authorizes vacatur (Id. at *24, fn. 10), ordering vacatur in this case exceeds the limits of a single federal district court to issue remedies affecting the entire nation.

injunction enjoining enforcement actions that would ensure educational institutions comply with their legal obligations to not discriminate based on race, color, or national origin. (Doc. no. 74.)

Now, Plaintiffs seek summary judgment requesting the Court find that DOE's actions are so egregious as to justify invoking the sweeping remedy of vacatur. (Doc. no. 81.) In the alternative, Plaintiffs request the Court to invoke its equitable authority to issue a nationwide permanent injunction barring implementation of any enforcement action pursuant to the Department's letter. (Doc. no. 81.) The Court should decline Plaintiffs' request because the relief sought is neither justified by the facts nor within the Court's authority to grant.

This district recently awarded provisional class certification under F.R.C.P. 23 and a classwide preliminary injunction under F.R.C.P. 65(a) to a group of individuals challenging President Trump's Executive Order No. 14160. *"Barbara," et al. v. Trump* (Case No. 25-cv-244, D.N.H.). This Order identifies circumstances where a person born in the United States is not "subject to the jurisdiction thereof" and is thus not recognized as an American citizen. Respectfully, this decision should have no bearing on the efficacy of arguments presented herein. Amicus's arguments relate to this Court's equitable authority to vacate an executive order as a final decision, not to award a class certification or to issue preliminary relief.

## ARGUMENT

Courts are limited in their authority to award equitable remedies. A valid Article III remedy "operate[s], with respect to specific parties," not with respect to a law "in the abstract." *California v. Texas*, 593 U.S. 659, 672 (2021) (internal citations omitted). And awarding vacatur here goes beyond the Court's Article III authority.

This case involves the Department of Education issuing a February 14, 2025, correspondence providing notice that the Department would take "appropriate measures to assess

2

compliance" with principles prohibiting discrimination on the basis of race, color, or national origin. To that end, the DCL "advised" educational institutions to take three actions:

    (1) ensure that their policies comply with existing civil rights law;

    (2) cease all efforts to circumvent prohibitions on the use of race by relying on proxies or other indirect means to accomplish such ends;

    (3) cease all reliance on third-party contractors, clearinghouses, or aggregators that are being used by institutions in an effort to circumvent prohibited uses of race.

(Doc. no. 1-1.)

Vacating or annulling what amounts to a guidance letter exceeds the traditional limitations on the Court's equitable powers and is not authorized under Section 706 of the APA. The letter here lacks any force of law and does not represent a final agency action. Proper application of precedent and principles of equity require denial of the relief Plaintiffs seek. Since the beginning of the current presidential administration, district courts have used their equitable powers to issue sweeping rulings to, ostensibly, curb the President's actions to implement his agenda. As recently as July 7, 2025, a district court in this Circuit went so far as to issue a Temporary Restraining Order enjoining the Department of Health and Human Services ("HHS") from carrying out appropriations directives enacted by Congress in the "Big Beautiful Bill." *Planned Parenthood Fed'n of Am., Inc. v. Robert F. Kennedy* (Case No. 1:25-cv-11913, D. Mass., July 7, 2025). Courts have enjoined the Administration from removing noncitizens illegally present in the country under the Alien Enemies Act. *J.G.G. v. Trump* (Case No. 1:25-cv-00766, D.D.C., Mar. 15, 2025). They have granted relief to parties seeking to stop the mobilization of the national guard to provide security to U.S. Immigration and Customs Enforcement agents when those officials execute their law-enforcement duties. *Newsom v. Trump*, (Case No. 3:25-cv-04870, N.D. Cal., June 12, 2025). The width and breath of these

3

orders appear extraordinary and unprecedented. This Court should not follow this troublesome course of enjoining executive branch actions by further imposing broad equitable relief.

In this case, Plaintiffs initially obtained an injunction prohibiting any enforcement action or attempts to implement the DCL. (Doc. no. 74.) Plaintiffs now request that the Court use its equitable power to vacate the letter in its entirety. (Doc. no. 81.) There are, however, limitations to a court's constitutional and legal authority to issue such a powerful remedy. And those limitations apply in cases like this—where an agency has not issued a final action carrying any force of law. Rooted in traditional jurisprudence are principles ensuring that the courts stay within their constitutional lane. In short, awarding vacatur violates Justice Thomas's admonition to use "equitable remedies only sparingly, subject to clear rules guiding its use." *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) (Thomas, J., concurring).

### A. The Framers recognized limits on a court's use of its equitable powers tethered to fundamental rules and tradition.

Article III extends "the judicial power of the United States" to "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . . ." U.S. Const. art. III, § 1. Jurisdiction of federal courts "shall extend to all Cases, in Law and Equity . . . ." U.S. Const. art. III, § 1. Courts rely on this authority to issue equitable remedies and to assert jurisdiction in cases and controversies that come before them.

Courts, however, should be leery of asserting broad equitable relief to remedy perceived wrongs. As the esteemed constitutional scholar, the late Professor Gary L. McDowell, explained "[t]he equity power was never intended to be used to grant broad remedies to entire social classes." Instead, according to Professor McDowell, "it was intended to provide particular relief to specific individuals in cases where the aggrieved party had suffered a clear and irreparable

4

injury for which the law, by its generality, could not provide a plain and adequate remedy."  Gary L. McDowell, *Equity and the Constitution*, 121-22 (University of Chicago Press, 1982).  Thus, "[e]xtravagant uses of judicial power are at odds with the history and tradition of the equity power and the Framers' design."  *Missouri v. Jenkins*, 515 U.S. at 126 (Thomas, J. concurring).  The extent to which the judiciary could properly exercise its equitable power was the subject of debate at the time of the ratification and this debate evinces the Framers' concerns about the unchecked use of a court's power.

Problems associated with granting judges broad authority to issue wide-ranging equitable powers were not foreign to the Framers.  The Framers broadly debated the proper scope of judicial remedies under Article III.  Initially, Anti-Federalists pointed out that Article III's reference to equity "granted federal judges excessive discretion to deviate from the requirements of the law."  *Id.* at 128.  "Federal Farmer" for example, believed that the mention of equity jurisdiction was not "intended to lodge an arbitrary power or discretion in the judges, to decide as their conscience, their opinions, their caprice, or their politics might dictate."  *Id.* (quoting Federal Farmer No. 15, Jan. 18, 1788, in 2 *The Complete Anti-Federalist* 322-323 (Herbert J. Soring ed., 1981)).

Another Anti-Federalist, Brutus believed that the equity power would allow courts to "explain the constitution, according to the reasoning spirt of it, without being confined to the words or letter."  Brutus No. 11, Jan. 31, 1788, in 2 *The Complete Anti-Federalist* 419 (Herbert J. Soring ed., 1981).  And in the context of making equitable interpretations untethered to tradition and background rules "judges [would] feel no necessity to confine themselves to 'any fixed or established rules, but will determine, according to what appears to them, the reason and the spirit

of the constitution.'"  McDowell, *Equity and the Constitution*, 43 (quoting Brutus No. 11,

January 31, 1788, in 2 *The Complete Anti-Federalist*, (Herbert J. Soring ed.,  1981)).

Hamilton responded to these concerns by noting that rules, practices, and precedents

would serve as limits to a judge's equitable power: "To avoid an arbitrary discretion in the

courts, it is indispensable that they should be bound down by strict rules and precedents, which

serve to define and point out their duty in every particular case that comes before them."  *The*

*Federalist No. 78*, at 529 (Alexander Hamilton) (Jacob Cooke ed., 1961).  Thus, "the great and

primary use of a court of equity is to give relief in extraordinary cases" and that "the principles

by which that relief is governed are now reduced to a regular system."  *The Federalist No. 83*, at

569 (Alexander Hamilton) (Jacob Cooke ed., 1961).  Hamilton's acknowledgment of the

necessity of "strict rules and precedents" is consistent with Blackstone's concerns that failure to

limit equitable power "would have become too arbitrary to have been endured in a country like

this, which boasts of being governed in all respect by law and not by will."  3 William

Blackstone, *Commentaries on the Laws of England* 436 (1786).

Thus, "it should come as no surprise that there is no early record of the exercise of broad

remedial powers."  *Missouri v. Jenkins*, 515 U.S. at 130 (Thomas, J., concurring).  And "there

were no 'structural injunctions' issued by the federal courts, nor were there any examples of

continuing judicial supervision and management of governmental institutions."  *Id.*  Courts,

therefore, "should exercise the power to impose equitable remedies only sparingly, subject to

clear rules guiding its use."  *Id.* at 131.  The passage of the Judiciary Act of 1789 and subsequent

procedural laws ensuring separation of the procedures of equity pleadings and pleadings at law

also indicate the law's authors "saw this procedural distinction as necessary if equity was to be

kept from becoming a dangerous source of unfettered judicial discretion."  McDowell, *supra* at

47.  Equitable remedies should therefore operate "on a plaintiff-specific basis."  *Trump. v. CASA*, Inc., No. 24A884, 2025 U.S. LEXIS 2501, *37 (June 27, 2025) (Thomas, J., concurring).

Both the robust debate regarding the judiciary's potential abuse of its equitable authority, and the passage of the Judiciary Act underscore the importance of carefully weighing the implications of invoking any equitable power—particularly vacatur and particularly in the present case where the Department of Education has not issued a final action carrying the force of law.

### B.  The APA does not authorize the Court to vacate the DCL.

Fundamental rules of equity "require that judgments be tailored to provide relief to the parties properly before the court." Adity Bamzi, *Federal Courts, Practice & Procedure: History of the Administrative Procedure Act & Judicial Review: The Path of Administrative Law Remedies*, 98 Notre Dame L. Rev. 2037, 2041 (2023).  And before issuing a remedy, "[c]ourts must ask whether the relief plaintiffs seek 'was traditionally accorded by courts of equity.' " *Trump. v. CASA*, Inc., No. 24A884, 2025 U.S. LEXIS 2501, *38 (June 27, 2025) (Thomas, J., concurring, quoting *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 319 (1999)).  This means that "[i]n some cases, traditional equitable limits will require courts and plaintiffs to make do with less than complete relief."  *Id.*

Within this context, Section 706 of the APA does not authorize courts to vacate nonfinal agency actions that have no force of law.  Instead, it directs courts to "hold unlawful and *set aside* agency action" and incorporates "background rules of equity and judgments."  Bamzi, *supra* at 2040 (emphasis added). "Set aside" was never intended to "displace the traditional limits on judgments and equitable remedies."  *Id.* at 2042.  At the time of the APA's enactment, the term "set aside" "hardly meant to suggest [courts] had the power to erase statutes from the

7

books." *United States v. Texas*, 599 U.S. 670, 696 (Gorsuch, J., concurring, citing *Dennis v. United States*, 341 U.S. 494, 525-526 (Frankfurter, J., concurring)).  Instead, it meant "to put to one side; discard; dismiss" and "to reject from consideration; overrule."  *Id.* (quoting *Webster's New International Dictionary* 2291 (2d ed. 1954)).  In the words of one federal judge, interpreting "set aside" as authorizing vacatur raises the important question: "Whether Congress meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case or create a new and far-reaching power through this unremarkable language."  *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring).

Plaintiffs' reliance on Section 706 to support their argument that vacatur is the proper remedy in this case is misplaced.  First, consider the title of Section 706: "Scope of review," "a title it has borne since the [APA's] enactment in 1946."  *United States v. Texas*, 599 U.S. at 696 (Gorsuch, J., concurring).  "Scope of review" precludes authorizing a specified remedy such as vacatur.  *Id.*  Instead, it provides context for Section 706's placement within the APA.  Next, consider the additional language in Section 706: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of an agency action."  *Id.* at 697 (quoting 5 U.S.C. § 706).  This command does not speak to a court's authority to issue a remedy—rather, it requires a court "to apply 'de novo review on questions of law' as it considers the parties' arguments in the course of reaching its judgment."  *Id.* (quoting *Kisor v. Wilkie*, 588 U.S. 558, 605 (2019) (Gorsuch, J., concurring)).

Further, within the larger statutory context, Section 702 specifies that judicial review will be limited to "person[s]" who have "suffer[ed] legal wrong because of agency action, or [been] adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  Accordingly, this language

confirms that "Congress nodded to traditional standing rules and remedial principles." *United States v. Texas*, 599 U.S. at 698. Accepting that Section 706 authorizes vacatur means that Congress "proceeded just a few paragraphs later to plow right through those rules and empower a single judge to award a novel form of relief affecting parties and nonparties alike." *Id.*

Section 703, not Section 706, of the APA provides the necessary contours delineating the remedies available to a court when issuing equitable relief. In fact, the legislative history repeatedly refers to Section 703 as applying to remedies. *See, e.g.*, Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d. Sess. 36-37 (1946); 92 Cong. Rec. 2159 (1946). The Supreme Court, however, "has never treated general statutory grants of equitable authority as giving federal courts a freewheeling power to fashion new forms of equitable remedies." *Trump v. Hawaii*, 585 U.S. 667, 714 (2018) (Thomas, J., concurring). To that end, Section 703 instructs courts to "use an appropriate remedy from among those traditionally granted." Bamzi, *Federal Courts* at 2043. Consistent with this principle is the notion that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." And a "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Id.* at 2056 (*quoting Lewis v. Casey*, 518 U.S. 343, 357 (1996)). The DCL has not injured Plaintiffs to the extent necessary to justify vacatur—it simply reminds them of their obligations to follow the law.

Section 703 authorizes an aggrieved party to bring "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." 5 U.S.C. § 703. "Conspicuously missing from the list is vacatur." *United States v. Texas*, 599 U.S. at 698 (Gorsuch, J., concurring). It is not "apparent why Congress would have listed most remedies in Section 703 only to bury another (and arguably the most

9

powerful one) in a later section addressed to the scope of review." *Id.* at 698 (citing John

Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal*

*Injunctions or Other Universal Remedies*, 37 Yale J. Reg. Bull. 37, 37, 45-46 (2020)).  And

Section 703 recognizes that certain cases are controlled by a "special statutory review

proceeding" which may vest the reviewing court to vacate an order or rule.  *Id.* at 39-40 (quoting

5 U.S.C. § 703).

      The authority to "set aside" an agency action does not empower a district court to vacate

a guidance letter suggesting the possibility (or probability) that—at some future date—the

Department will initiate enforcement proceedings consistent with the law and a Supreme Court

ruling.  Such improper extension of a court's authority under the APA infringes on the inherent

duties of the executive branch to enforce the nation's laws and provide guidance to entities

subject to those laws.

      Vacating the DCL runs counter to the traditional limitations on equitable relief available

to courts.  First, the DCL is not a "final action" for purposes of the APA.  In *Bennett v. Spear*,

520 U.S. 154 (1997), the Supreme Court outlined two key requirements for agency action to be

considered "final" under the APA. First, the action must represent the end of the agency's

decision-making process—it cannot be provisional nor preliminary.  Second, it must be an action

that establishes rights or obligations, or one from which legal consequences follow. *Id.* at 177–

78. Neither requirement is met here.  The letter in question merely reiterates existing legal

obligations; it does not mark the conclusion of any agency decision-making process, nor does it

create new rights, obligations, or legal consequences. *See, e.g., Corner Post, Inc. v. Bd. of*

*Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (quoting *Bennett v. Spear*).

The Dear Colleague Letter here imposes no obligations on Plaintiffs.  Nor does it specifically direct Plaintiffs to cease operation of any of their core business activities.  Again, the DCL merely "advised" educational institutions to take three actions—all of which involve following federal law.  Assertions that the DCL extends prohibitions to educators for "simply speaking with students about the role that race and attitudes toward race have played in American history" (Doc. no. 74) are false and misleading as the Department has taken no action and has threatened no action.  Further, assuming the DCL suggests that the Department will accuse teachers of engaging "in discrimination" for "teaching historical facts" (Doc. no. 74) distorts the DCL's language and purpose—simply reminding educators of their duty to comply with federal laws and that discrimination on the basis of race is unlawful.

The speculative and hyperbolic nature of the alleged harms in no way justifies the Court's imposition of the powerful and improperly sweeping remedy of vacatur.

## CONCLUSION

For these reasons, Landmark Legal Foundation respectfully urges the Court to deny Plaintiffs' Motion for Summary Judgment and to lift the Preliminary Injunction previously granted.

Respectfully submitted,

/s/ Jacob M. Rhodes
Jacob M. Rhodes, Esq.  (NH Bar #274590)
Cleveland, Waters and Bass, P.A.
Two Capital Plaza
5th Floor
Concord, NH 03301
(603) 224-7761
rhodesj@cwbpa.com

11

Michael J. O'Neill (*not admitted in this district*)
Landmark Legal Foundation
19415 Deerfield Ave.
Suite 312
Leesburg, VA 20176
(703) 554-6105
mike@landmarklegal.org

*Counsel for Amicus Curiae*

Dated: July 18, 2025

## CERTIFICATE OF SERVICE

I certify that on July 18, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's ECF system, which will automatically send email notification to all counsel of record.

/s/ Jacob M. Rhodes
Jacob M. Rhodes, Esq.

12